Would the attorneys who are going to argue the case please approach the bench, identify yourselves for the record, and tell us how much time you would like for the appellant. Reserve five minutes for the rebuttal. Good morning, Your Honor. For the appellant, Karen Let me interrupt you. The microphone is for recording purposes only. It's not for amplification. Thank you, Judge. So you're going to have to speak louder. Okay? Karen Daniel, Northwestern Pritzker School of Law, on behalf of Antonio Nicholas. Your Honor, is the total period of time 20 minutes in this court for argument? Approximately. Then I will take 15 minutes and reserve five for rebuttal, please. Very well. Robert Williams, Special Assistant State's Attorney for the State of Illinois. How much time would you like, Mr. Williams? 20 minutes, Your Honor. Very well. I wanted to make counsel for the state aware that until 2014, my husband was on the board of the center and we had often contributors to the center and also contributed to Kim Fox. I think I contributed on both sides, but if you have any problem with it, please let me know and we can have another justice assigned to the case. Okay. Thank you. All right. In case the recording didn't pick it up, Mr. Williams indicated that he had no objection to Justice McPhilip remaining on the case. Is that correct, Mr. Williams? Yes, Your Honor. Thank you very much. I have no objection either, Your Honor. Good morning, Your Honors, co-counsel and counsel. May it please the Court. Beginning in 1991, Antonio Nicholas has claimed that when he was under interrogation at Area 5, excuse me, Area 3 Detective Division, that detectives then under the command of Commander John Burge beat him during the interrogation such that he gave an involuntary confession to the crimes of which he was a suspect. He made a pretrial motion to suppress his confession on the grounds of involuntariness. At the suppression hearing, the presiding judge found the officer's denials of abuse more credible than Mr. Nicholas's claims of abuse. Therefore, the confession was admitted into evidence at trial and Mr. Nicholas was convicted of first-degree murder and related offenses. I just had a question. I think it's pretty clear that the judge who presiding over the current post-conviction petition was not the trial judge. Is that correct? That is correct, Judge. Who was the trial judge? Judge Urso. Urso. All right. Thank you. And excuse me, Justice McPhilip. Since 2007, Mr. Nicholas has been asking, pleading with the circuit court and with this court to allow him to reopen his coercion claim and to produce new evidence, an avalanche of new evidence that has come forth in the intervening period of time demonstrating both that there was a pervasive systemic pattern of abuse by detectives at Areas 2 and Areas 3 under the command of John Burge and that the particular detectives who participated in Mr. Nicholas's interrogation have been the subject of allegations that they as individuals have engaged in a pattern and practice of misconduct that included the period of time of Mr. Nicholas's interrogation. This case was last before this court in March. We decided the case in March of 2013, so four and a half years ago. And at that time, in considering this case, this court considered pretty much all of the issues that we're going to be talking about today and seemingly cleared away all the procedural hurdles to Mr. Nicholas reopening his case and proceeding again on his coercion claim. And yet here we are again today talking about pretty much all of the same things.    I mean, let's be honest, Mr. Kiss.  Why don't you do a bit more of a presentation of what you found, and then I will give back the opportunity for you to reflate it. What do you think could have happened unremanded other than a thirdstage evidentiary here? I mean, what possibly could have been the basis on which the Court, in your mind, unremanded, could have said there's no need for a thirdstage evidentiary here? Well, one thing that the Court did say was that it disagreed with this Court's opinion in 2013. Which, you say, that wasn't appropriate. I understand that. I get that argument. Is there anything that could have happened unremanded that wouldn't have been a thirdstage evidentiary here? I guess I'm trying to figure out what the Court was charged with, in your mind, once the case was remanded. Well, one of the interesting things about first conviction practice is that it has three stages. And courts have said, and particularly in Cooper v. Rice, the Illinois Supreme Court case, is that you can never skip steps. This case actually started with not the first stage, which is the lowest pleading place, but with a motion for leave to file a successive petition. And that's a fairly high bar. It's higher than first stage. It's close to second stage, where you have to make a substantial showing. And in one of the cases, actually, that is cited in the Slate's brief, I believe it's People v. Smith, there's some discussion about that, and the Court says that sometimes, as a practical matter, it is the same thing. In this case, so one thing that could have happened in this case, I suppose, is that when the State answered the petition, when the State filed the motion to dismiss, the State could have attached something to its petition that might have changed things. They didn't. They just responded based on the documents that we attached. In this case, honestly, Judge, other than that, other than something unexpected that they might have attached, I don't think anything — So you're kind of saying once this Court has said there was cause and prejudice, they've essentially answered the question that you're going to decide on a motion to dismiss? I'm not saying that as a matter of law. In this case? In this case. Okay. And the fact is that between Mr. Nicholas's per se petition and our amended petition, we did add a lot of additional allegations. He mainly relied on the 2006 — he's got a lot of names — Burge report, Egan report, the 2006 report. I'll just — What about the 2006 report? The 2006 report. So he relied on that, and he relied on something that was new from any previous proceeding, which was his ability to have identified the officer that came in and played the good cop role, which he figured out was Detective McQueen. So that was new. What we added when we amended the petition after the remand was additional allegations and documents of misconduct by the various officers. So we beefed it up even beyond the 2006 report. But, Judge, what the court board was charged with was deciding whether Mr. Nicholas made a substantial showing, a violation of a constitutional right, and his claim being that his confession was coerced, which was a violation of his constitutional right. Per People v. Tyler, a 2015 decision that we cited, that similarly as what we're asking this court to do, remanded for a third-stage evidentiary hearing on a claim of misconduct by officers including O'Brien, I might add, Illinois courts have consistently held that a pervasive pattern of criminal conduct by police officers is enough for courts to reconsider the voluntariness of a defendant's confession. And so what we have now that we didn't have in 1991 through 1993 when his case was going through pretrial and trial proceedings is, again, the 2006 report and all of the allegations showing what these various officers are alleged to have done during that time period. You're asking for a return to a third-stage hearing, correct? That's right. Yes, Judge. You're also asking there was order a different judge to hear it. Yes, Judge, and they didn't really – Which judge don't you want? The one that wrote the opinion in this case, Judge Matthew Coughlin, Your Honor, is the judge who actually considered the pro se petition and denied leave to file it. And then this court remanded it back. And at that time there was no request that it go to a different judge. On what factual basis can you tell us justifies a new judge other than the old judge did decide what we liked? This judge wrote a 35-page opinion concluding that there was no need for an evidentiary hearing. Our evidence that we attached to the petition, it's over there, a huge stack of complaints against the particular officers involved in this case. The judge went into great detail about the evidence of guilt, went into great detail about Mr. Nicholas' testimony at the pretrial hearings. Judge Coughlin never addressed the new evidence that we put forward of specific allegations against Detectives O'Brien, Stalick, and McWaney. He focused solely on only half of the credibility equation that's going to be the subject of the new hearing, which is the Antonio Nicholas side. He said, and I think, by the way, he was misstating the record, but he looked at the different ways that Mr. Nicholas described his abuse. He found it inconsistent. At one point in his decision on page 27, he said, this is a glaring inconsistency which this court finds impossible to ignore. He was so obsessed, that's a bad word, that he was so focused on only half of the credibility equation that he found it permissible, and he said he did this, to depart from this court's findings in 2013. Did the trial court make credibility findings in this proceeding? He essentially did, in the sense that if you read his opinion as a whole, what he found was that he found Mr. Nicholas so incredible that it doesn't matter what these detectives did, because we have to presume that all the allegations against these detectives are true. He said, I don't care how many people, I mean, he didn't say this, but effectively, he said, I don't care how many people they tortured and beat. I don't care how many times McWhinney came in and played good cop, just like Mr. Nicholas said he did. That can never, in my mind, outweigh these inconsistencies that he found in Mr. Nicholas's testimony. He prejudged the ultimate issue in this case, which is whether the new evidence of misconduct by these officers could change the credibility equation and at least create the possibility of a new outcome. He also, to demonstrate his hostility to this type of claim, the Burge claim, he reached out, read the newspaper, maybe looked online, and found an article in which a family member of a murder victim had made a statement to the media about Burge cases and said something along the lines of, just because Burge's name is mentioned, it doesn't mean that there was abuse, and he cited that in his opinion. Are we required to show the trial judge any deference in this matter? No, Judge. This is a de novo review. This Court has de novo review of the pleadings in the case, and then that's agreed by both sides. I think the last thing I'd like to point out about the opinion, which again demonstrates a predisposition against Mr. Nicholas, is it's a long opinion, and at the end, just before the conclusion, there's an other considerations section in which Judge Coughlin talks about the evidence of guilt, of the underlying crime. He talks about this is not a case where DNA is going to exonerate the petitioner. He said this is a case where there is no serious doubt as to the petitioner's guilt. That was a consideration that he used. Now, I don't agree with that. I think there's serious doubt as to my client's guilt. But does it really matter? It doesn't matter in this case. That's not the issue. The issue is the voluntariness of the confession, and in particular, in this proceeding, whether the new evidence can cast enough doubt on the credibility of the officers that the outcome of the suppression hearing might be different. The judge below has prejudged that issue without talking about any of the new evidence. But it was appropriate, was it not, for the trial judge to determine whether the claim, the constitutional claim was rebutted by the trial record. That is appropriate, correct? It is appropriate, but the claim is not rebutted by the record. It's just undermined. Uncertain inconsistencies is what you're saying. There's a difference between something being rebutted by the record, and the example of that is the claim of the petitioner is the judge didn't advise me of my right to a jury trial. And then you go to the record and you read in the transcript the admonishment about the right to a jury trial. That's rebutted by the record. But it's not that there's conflicting evidence on a particular point. That's not rebutted by the record. The fact that Mr. Nicholas said I was abused and the officer said we didn't abuse him, that's conflicting testimony. That doesn't mean it's rebutted by the record. It is appropriate to consider places in the testimony where Mr. Nicholas' account is not corroborated or if he makes inconsistent remarks. That's appropriate to consider ultimately, but you can't decide how significant that is until you look at how much are the officers impeached? How much is their credibility impeached by time after time after time they've abused other suspects? Because that might outweigh whatever mistakes Mr. Nicholas might have made in his timeline of the offense or whether he didn't always describe the incident in exactly the same way. So it's not inappropriate to look at the record, but saying that there's conflicting testimony or an inconsistency, that's not what it means to say a claim is rebutted by the record. The only way you could rebut this claim of coercion is if somehow a videotape of it emerged after 26 years, and we know that's not going to happen. So the best we're left with, thank you, is to allow Mr. Nicholas to have the same full and fair hearing as so many other petitioners have had in the intervening four and a half years since you've last heard this case. Some of these men are actually free and among us now because they've been successful on exactly the same kind of claim. And so, Your Honor, I ask you to remand this case for an evidentiary hearing in front of a new judge. Thank you. Thank you. Your Honor, please support. This case, I think you have to look at the appellate court's prior decision, your decision in which you reversed and remanded it for a stage two proceeding, not for a third stage evidentiary hearing. And counsel had a lot of things in her brief about, you know, the court can't, it's not a case, you can't go and change the facts that the appellate court found. But the appellate court actually made conclusions based on what was in front of it the first time. At a stage two proceeding, a stage one, the defendant only has to show a gist of a constitutional claim. Now, the stage two. This is a successive petition. A successive petition. Different animal. I'm sorry? It's a different proceeding. What is a different? It's not a first stage, it's not an initial post-conviction petition. Correct. You can only file a successive petition if the trial court allows you to do it. And you have to pass the cause and prejudice test. Right. And Judge Coghlan held that he did not. Right. The petitioner took an appeal. Correct. The appellate court ruled that he did overcome res judicata considerations, cause and prejudice. Yes, correct, Judge. And the court went through what he presented to the trial court and found that it was sufficient. Where does Judge Coghlan get the right to go back and say that we were wrong that he viewed the facts differently than the appellate court did? Judge, there are two issues here. One, Judge viewed the facts as being different than what the appellate court had in front of it. What right does he have to do that? Is there any precedent for that? He relied on the Sutton case, which was cited in his opinion, where when the facts are, new facts arise that are totally different, it's not by law the case. But second and even more important. What new facts arose, new facts arose that were contrary to what the appellate court found in granting him the second stage hearing? Your Honor, the state was not involved in the first stage. The state became involved in the. . . Did you read the opinion? Yes. Yes. Okay. So tell me, what was different? What facts were different that Judge Coghlan considered that we considered? Judge Coghlan looked at, in addition to just a question of corroboration, he looked into whether or not the facts in the record rebutted the claims in the petition and whether or not the addition of Mr. McQueen to the equation changed the question of whether or not it should be advanced to the stage three. And stage two was. . . And did we address that in our Nicholas opinion? You addressed it in terms of cause and prejudice, that it injects a new factor into the equation and that it satisfies the cause and prejudice test. And what about the statement of this court in the Nicholas opinion that said, there is little doubt that the later identification by name of the good cop McQueen adds a significant detail when compared with other similar abuse claims and lends considerable corroborative weight to the defendant's claim? Does that tell you anything about whether that was important to the appellate court? Yes, it does. Yes. On what basis, what rule of law does Judge Coghlan have to rely on to second guess or to overrule that conclusion? Well, Your Honor, in a second stage proceeding, and I would address the fact that the court did not automatically remand the case for a third stage evidentiary hearing. At a second stage proceeding, the State has a right to move to dismiss. The State has the right to address whether or not the facts contained in the petition are rebutted by the record. And that's what the State did and that's what the court adopted. The court went through a series of steps, including the fact that the court, the appellate court even concluded that he had consistently maintained his. And what was the appellate court's conclusion? That he had consistently. And what was the trial judge's conclusion after we sent it back for a second stage? After it was sent back, the trial court went through. What did the trial court conclude? The trial court concluded that if you go back to. What did the trial court conclude? That it was not consistent. So that is an inconsistent finding with the appellate court finding. Correct. What basis does Judge Cochran have to do that? When we ruled in this case that Mr. Nicholas consistently attacked the voluntariness of his confession. Because he concluded that consistency that the appellate court had ruled went from when he filed his motion to suppress from that date. Do you recognize that? Because you're not going to win that point. The appellate court ruled that he has consistently attacked his involuntary confession. He's consistently done that. We've held that. Now Judge Cochran can disagree with that. But he has to recognize that that was our finding. And he has no authority to overrule that finding. None. Well, he believed, and I'm just going from what his opinion says, that the appellate court did not address the facts prior to his motion to suppress. The way he would address it. The way it would be addressed otherwise. That's the way it always is. But the standard that he has to consider at a stage two, he has to consider whether or not the defendant's evidence is of such a conclusive character that it would probably change the result on the retrial. And in order to do that, he had to look to see whether his allegations would lead that way. Did the appellate court have to essentially reach the same finding in order to allow the successive postconviction petition to proceed to the second stage? Not to the second stage, but if the court wanted it to go to a third stage hearing, that would have been the order of the court. Just skip the second stage? Yes. And he goes to the third stage without a lawyer? No. Okay. He goes to the third stage without being allowed to amend his petition and add additional evidence? No. So maybe the second stage was necessary. Yes. But at the second stage also, the State has a right to attack the petition. And the attack to the petition probably would have been the same if the State had been allowed to move to dismiss the petition, the successive petition, before the trial court even ruled on it. It's really no different, is it? No, not really. Okay. Well, let's move on to another point. Okay. In looking at the evidence, and if the court does not believe that the record rebutted the allegations made by the defendant and that he should automatically go to a third stage proceeding, then the State's argument is pretty much not valid. I mean, that's really the question. And I did some research in preparation for today to see where courts have dismissed cases based on allegations made in a post-conviction petition that were rebutted by the record. And I found cases where it was used in dicta, but I have not found a case where it's actually been done or said it couldn't be done. And I'm sure you haven't found one that it was done after an appeal, a dismissal, and a successive petition. No. I haven't found one either way. And I don't think you're going to find one. Okay. Not in this case, please. Okay. Well, we believe that in analyzing what was before it, Judge Coghlan made his strongest statement was in attacking the defendant's timeline. In what? In attacking the defendant's timeline. The defendant claims that he was abused by police officers for 15 to 20 minutes, and it happened after his lineup. The lineup ended at 3.25 a.m., and the assistant State's attorneys arrived at 3.30. At the time, they testified that when they arrived, they spoke to Detectives O'Brien and Staddock for about 30 minutes. Both went with Detective O'Brien to interview Co-Defendant Washington for about another 30 minutes. And then at 4.30, O'Brien went to interview the defendant with A.S.A. Burns, who gave the defendant his Miranda rights. A.S.A. Burns, who is now a judge, spoke with the defendant outside the presence of the police, and he was told his testimony was that he was told that he was treated all right by the police. You may have answered this already in what you said the cases you couldn't find, but did you find or cite a case in which, rebutted by the record, in which this Court or the Supreme Court found something to be rebutted by the record, when, in fact, I think the most that you can say here is that it's severely undermined, that his claim is severely undermined by things in the record? There's nothing in the record that says this confession was voluntary. There's nothing – there's testimony by police officers that say that, and then there's inconsistent testimony by the defendant saying it was involuntary, and you're saying that side's undermined. That side has left itself open for effective cross-examination. But I'm not familiar with that kind of basis for undermined by the record. Is there a case you rely on? No, but that's why I went to what I thought was the strongest statement that was made in the judge's opinion. I think the timeline is problematic. It's more than problematic. It's almost impossible. If he's right about the timeline. Well, the only – the biggest distinction here, the only way that would make this timeline – have time for him to get beaten by the police would be if the first time that he – he puts in his petition, the first time he meets the assistant state's attorneys was when he was going in to get his confession at 6.15 in the morning. That would mean that not only that the police officers perjured themselves at his motion to suppress in a trial, but also the assistant state's attorneys. And I think that the record there would rebut him because there just was not sufficient time. So if you're saying that the state's attorney – if you're accepting the state's attorney's testimony – Two state's attorneys. Oh, right. In the police officer's testimony. Yes. On the printed word. Yes. Isn't that making a credibility determination, them versus the defendants? Is it or is it not? For the police officers, yes. For the assistant state's attorneys, no. They're not being charged with abusing the defendants. Their testimony is taken at face value. They saw no abuse of the defendant. Who takes it at face value? The court. That's a credibility determination. If you're saying that these printed words are true, they conflict with the defendant's printed words, and you're selecting one over the other. You can't do that unless you're making a credibility determination. Am I correct or no? Yes. Okay. So the judge was making credibility determinations. Does that make sense at the second stage? I think it makes sense if it has been an unrebutted part of the record. The timeline hadn't really been challenged until the second stage petition was challenged. And it would have been physically impossible for any abuse to have taken place unless the assistant state's attorneys were not present with the defendant until the time the court reporter showed up and his confession was given, with all of the events that took place in between. Can you briefly address if we were to reverse whether we should or should not remand it to a different judge? I don't see that Judge Carlin expressed prejudice to this defendant. Whether he was right or wrong in his opinion, I believe he was just following what he believed he was supposed to under the law in addressing a motion to dismiss at the second stage. I don't see. Well, counsel for the petitioner said that he said that there's no serious doubt as to the defendant's guilt. Did he say that? He did say that. And when I read it at first I was a little surprised, but I thought this isn't a conclusion. I think it's merely a comment that guilt or innocence is not at issue on this particular motion to dismiss and on this particular second stage opinion. So why did he say it? I don't know. Would you at least admit that that would raise a question as to whether the judges prejudge the situation? May or may not. So what would the prudent thing to do be? I think Judge Carlin should keep the case if the case is remanded. I think he is a very competent judge. He knows the facts of this case very well. I don't believe that he's prejudiced in these cases. We've appeared in front of him in several cases. The one reference that counsel brought up to the quotation he had from the family member of someone who was a victim in one of these Burge cases I thought was a factor of pro because just because Burge's name pops up in these cases doesn't mean that every defendant who claims they were abused by Burge or one of his detectives who worked under his command should be given a pass. They still have to prove their case, and I think that's the intent that Judge Carlin had in his opinion. You can't just assume that everything that this defendant is alleging is a fact just because it involved detectives who worked under the supervision of John Burge. We believe that Judge Carlin just did what he thought he was charged to do under the Post-Conviction Act. Anything further? Nothing, Judge. Thank you. Thank you. Ms. Daniels, briefly. Well, it's not true that the timeline issue was raised for the first time on remand. Actually, if you read the briefs to this Court in the prior appeal, you'll see that the State also raised these issues with Mr. Nicholas's timeline. So this Court had those issues before when the Court decided the 2013 appeal. Counsel said that it should go back to Judge Carlin because he knows the facts. He centered much of his finding on a misapprehension of fact in the case, which is that Mr. Nicholas, according to him, when Mr. Nicholas described in the suppression hearing which detective punched him and knocked him out of the chair, Judge Carlin said that the testimony was that it was a detective other than Detective O'Brien. And at the later trial, Mr. Nicholas said it was O'Brien. That's misstating the record. What Mr. Nicholas said at the suppression hearing was that a detective knocked him out of the chair. He described the detective as a large, tall man, white man, which Detective O'Brien was. And I went back and looked at the suppression hearing, and I looked at the State's closing argument at the conclusion of the suppression hearing. This is on page TT10 of the trial court record. And here's the State's summation of Mr. Nicholas's testimony. At Area 3, he said that Detective O'Brien hit him with his fist to the chest, and three other detectives repeatedly kicked him and punched him. So the State, everybody at the trial knew that Mr. Nicholas was talking about Detective O'Brien when he was talking about who knocked him out of the chair. But the judge, again, felt like that perceived inconsistency was enough for him to disregard this court's prior findings. And finally, this is not just a Burge case. The evidence that we adduced, that we presented, went specifically to a pattern by Detective James O'Brien, Detective Stalick, and Detective Daniel McQueen. And in other cases, for example, People v. Reyes, the cases advanced having nothing to do with Burge, but because of patterns of misconduct alleged against particular officers. So this is not just a Burge case, although that would be enough to send it back. Thank you, Your Honors. Thank you. We all appreciate your efforts in your briefing and your argument today. It's an interesting issue. We will take the matter under advisement. The court stands by this. Thank you.